UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DWAYNE F. POOLE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:11-CV-1849 NAB |
| | ) |
| GMAC MORTGAGE, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 10] This matter is before the Court on GMAC Mortgage, LLC's ("GMAC") Motion to Dismiss filed on December 5, 2017. [Doc. 39] For the reasons set forth below, the Court will grant Defendant's motion to dismiss the case.

**Background**

On July 10, 2006, the Pooles took out a mortgage on their property at 220 River Rock Drive, in Union, Missouri. When the Pooles allegedly defaulted on their payments, the property was foreclosed. GMAC purchased the property at a trustee's sale on May 4, 2011, and subsequently conveyed it to another party. [Doc. 17-1 ¶ 9] On March 29, 2011, the Pooles filed a *pro se* Petition for Wrongful Foreclosure in the Circuit Court of Franklin County, Missouri. The Pooles vacated the property at issue in December 2011.

On July 28, 2011, the Pooles filed for Chapter 13 bankruptcy in the Eastern District of Missouri, triggering an automatic stay of other proceedings pursuant to 11 U.S.C. § 362. On August 18, 2011, GMAC filed a Motion for Order Granting Relief from the Automatic Stay to Proceed with Action to Recover Possession of Real Property and to Take Possession and Dispose

of Any Personal Property Found Therein Combined with Notice of Hearing. [Doc. 17-1.] On September 15. 2011, the Honorable Kathy A. Surratt-States granted the motion and issued an order stating that the foreclosure was lawful and any action to recover possession would be exempted from the automatic stay.

On October 24, 2011, GMAC removed the Pooles' wrongful foreclosure action to the United States District Court for the Eastern District of Missouri. [Doc. 1] On November 2, 2011, GMAC filed a Motion to Dismiss the Pooles' claim and a memorandum in support of the motion. [Doc. 8] The Pooles filed a Response on December 21, 2011 [Doc. 16] and GMAC filed a Reply on January 6, 2012 [Doc. 17].

On May 14, 2012, GMAC filed for Chapter 11 bankruptcy in the Southern District of New York, triggering an automatic stay of other proceedings, including this action, pursuant to 11 U.S.C. § 362(a). On July 13, 2012, the Bankruptcy Court entered a Final Supplemental Order ("Order"). The Order allowed certain claims to proceed against GMAC during the bankruptcy process. On November 18, 2013, Defendant filed a Motion to Dismiss Plaintiffs' Petition for Wrongful Foreclosure [Doc. 24] and a memorandum in support of the motion [Doc. 27], in which Defendant argued that, pursuant to the Order, this Court could rule on its Motion to Dismiss notwithstanding the automatic stay. On March 28, 2014, the Court denied Defendant's motion, finding that Defendant had failed to demonstrate that the Court retained authority to rule on the motion despite the automatic stay, and ordered that the case be administratively closed "until such time as the bankruptcy proceedings have been concluded or Court action is otherwise required." [Doc. 31] Additionally, the Court ordered that all pending motions in the case be denied without prejudice, and must be refiled if the case was subsequently reopened. *Id*.

On May 16, 2017, Defendant filed a Motion to Reopen the case for the "limited purpose of dismissal or other final adjudication." [Doc. 32] Defendant asserted that Plaintiffs have expressed a wish to rent or repurchase the property at issue in this action, and the "appearance of this case on title to the property prevents further transfer or sale of the property." *Id*. In its memorandum in support of the motion, GMAC stated that "the Court may reopen the action . . . because the bankruptcy case's confirmation order has now been entered and the Chapter 11 plan has been effective since December 2013." [Doc. 34 at 1] Defendant argued that the automatic stay terminated on the confirmation date of the Plan, pursuant to the operation of Section 362(c) of the Bankruptcy Code. The Court granted Defendants Motion to Reopen on November 14, 2017 [Doc. 35], and ordered Defendant to file a new Motion to Dismiss.

On December 5, 2017, Defendant filed this motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). [Doc. 39]. Plaintiffs have not responded to the Motion to Dismiss, and the time to do so has passed. Additionally, mail that this Court sent to Plaintiffs notifying them of the decision to reopen the case was returned without a forwarding address, and neither of the Pooles has notified the Court of any change of address[1]. [Doc. 38]

**Discussion**

In this case's long and somewhat tortured procedural history, this Court has never had occasion to address the substance of any of Plaintiffs' claims. In their petition for wrongful foreclosure, Plaintiffs asserted a veritable laundry list of conclusory claims. After parsing Plaintiffs' complaint, it appears that in addition to their claim for wrongful foreclosure, Plaintiffs

---

[1] The Local Rules of this Court require *pro se* parties to promptly notify the Clerk of any change in address or telephone number. *See* E.D. Mo. L.R. 2.06(B). If mail to a *pro se* party is returned to the Court without a forwarding address and the *pro se* party fails "to notify the Court of the change of address within thirty (30) days, the Court may, without further notice, dismiss the action without prejudice." *Id*. In this case, more than thirty days have passed, and neither *pro se* Plaintiff has contacted the Court with notification of a correct address. The Court notes that while it could dismiss the action without prejudice for this reason, it will proceed to address the merits of Defendant's motion to dismiss.

3

also requested relief based on violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), the Fair Credit Billing Act ("FCBA"), and allegations of common fraud, as well as a host of other allegations that are too vague to decipher, and all of which appear to be too baseless to address.[2] Plaintiffs appear to base their claims on a general allegation that because Defendant has not provided them with an original Note with "wet ink signature," Defendant could not have a valid right to foreclose on their property. Plaintiffs request relief in the form of an Order of this Court "denying Defendant's right to foreclose," and any other relief to which they are entitled, including litigation costs. Defendant argues that Plaintiffs' claims are without merit and must be dismissed because they fail to state a claim upon which relief can be granted.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

   **I.   Legal Standard**

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not

---

[2] Plaintiffs make bald assertions, with no facts that could provide support or context for the allegations, that Defendant is in violation of numerous Federal and State banking laws, interstate commerce laws, the Securities and Exchange Act, the Uniform Commercial Code, the Racketeer Influenced and Corrupt Organizations Act, international administrative law, Judicial law, and Admiralty/Maritime Law, and has allegedly committed the crimes of misprision, forgery, altering a secured instrument, and illegal conversion. [Doc. 6 at 6-7] Because Plaintiffs have not made even a minimal effort to state a claim with respect to these alleged violations of various laws, the Court will not attempt to address them. "A district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990 (citation omitted).

require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

In reviewing a complaint, district courts have an obligation to liberally construe the pleadings of self-represented litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a "district court is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations" to save a complaint. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (internal quotation and citation omitted).

## II. Wrongful Foreclosure

Plaintiffs appear to assert that Defendant never provided them with the original "wet ink signature" Note, which they claim is required by law, and that in failing to provide the original documentation, Defendant implicitly admitted that it did not have standing to foreclose. [Doc. 6 at 3-6] Plaintiffs' claim of wrongful foreclosure seems to rely on the "show me the note" theory,

5

which posits that "only the holder of an original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Sundell-Bahrd v. Tiffany & Bosco, P.A.*, No. CV 10-8096-PCT-MHM, 2010 WL 2595083, at *1 (D. Ariz. June 24, 2010). "This theory has been uniformly rejected by courts around the country. . . Under Missouri law, non-judicial foreclosure is a contractual right established by a power of sale clause in a deed of trust." *See Hobson v. Wells Fargo Home Mortg.*, No. 2:11CV00010 AGF, 2011 WL 370815, at *2 (E.D. Mo. Aug. 24, 2011) (citing cases). Here, the Deed of Trust [Doc. 9, Ex. 1] included a "power of sale" clause and was properly assigned to Defendant [Doc. 9, Ex. 2], which then appointed a successor Trustee to conduct the non-judicial foreclosure sale [Doc. 9, Ex. 3].[3] The Pooles' "show me the note" theory does not provide a viable legal basis for a wrongful foreclosure claim in Missouri, and thus, Plaintiffs have not presented a cognizable theory upon which the Court could issue an order denying Defendant's right to foreclose.

### III. FDCPA Violation

The Pooles also appear to assert that the foreclosure was wrongful because it violated the FDCPA. The FDCPA prohibits debt collectors from employing harassing, false, deceptive, misleading, or otherwise unfair or unconscionable means to collect debt. *See Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002). Their FDCPA claim seems to rest on the same "wet ink signature" theory discussed above—that Defendant's failure to provide the original Note and Deed of Trust somehow violates the requirements of the FDCPA. As discussed *supra*, this is not a cognizable theory under Missouri law. Additionally, an entity

---

[3] The Court takes judicial notice, pursuant to Federal Rule of Evidence § 201(b)-(d), of the Deed of Trust dated July 10, 2006, the Assignment of Deed of Trust recorded March 24, 2011, the Appointment of Successor Trustee recorded March 29, 2011, and the Trustee's Deed Under Sale recorded May 23, 2011, all recorded with the Franklin County Recorder of Deeds. A Court may "consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). A copy of the Note and Deed of Trust have been provided by Defendant and are properly considered with the motion to dismiss. *See Kulovic v. BAC Home Loans Servicing, L.P.*, No. 4:10-CV-2058 CAS, 2011 WL 1483374, at *2 (E.D. Mo. April 19, 2011).

"attempting to collect its own debt is not a 'debt collector' under the FDCPA." *Wilson v. Bank of Am. Corp., N.A.*, 4:10-CV-512 CAS, 2010 WL 3843781, at *4 (E.D. Mo. Sept. 27). Plaintiffs failed to assert or establish that Defendant is a "debt collector" subject to liability under the statute. Accordingly, the Court must dismiss their FDCPA claim.

### IV. RESPA Violation

RESPA provides that a servicer of a federally-related mortgage loan that receives a "qualified written request" from a borrower must respond to the request with appropriate information within 60 business days. 12 U.S.C. §2605(e)(2). A servicer's noncompliance entitles a borrower to recover "any actual damages to the borrower as a result of the failure." *Id*. §2605(f)(1). The only recourse under RESPA is the recovery of actual damages, and a "plaintiff who alleges a breach of §2605 without alleging damages fails to state a cause of action." *McWilliams v. Chase Home Fin., LLC,* No. 4:09CV609 RWS, 2010 WL 1817783, at *4 (E.D. Mo. May 4, 2010). Here, to the extent the Court can decipher the complaint, Plaintiffs have neither pleaded nor requested any actual damages in connection with the alleged RESPA violation. Thus, Plaintiffs have failed to state a claim for relief under RESPA.[4]

### V. TILA Violation

Plaintiffs appear to be asserting a right of rescission under TILA, 15 U.S.C. § 1635. When a loan is secured by the consumer's primary residence, TILA requires that the creditor "clearly and conspicuously disclose . . . to any obligor" his right "to rescind the transaction until midnight of the third business day following consummation of the transaction or the delivery of

---

[4] The Court notes that even if Plaintiffs had sufficiently stated a claim under RESPA, Defendant's response to the qualified written request appears to have been in compliance with the requirements of the statute. Plaintiffs sent a letter to Defendant on October 12, 2010, which they assert was their "qualified written request" under RESPA. In it they requested "a list of documents for [their] understanding and clarification of various sale, chain of transfer, funding source, legal and beneficial ownership, charges, credits, debits, transaction, payment analyses and records related to the servicing of" their mortgage. [Doc. 6-1 at 1] In response to this request, Defendant timely sent a payment history, an account statement, an explanation of proprietary business practices, and copies of the Note, Deed of Trust, and loan modification documents.

the information and rescission forms required under this section. . . ." 15 U.S.C. § 1635(a).  *See also Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 846 (8th Cir. 2009). If a creditor fails to comply with the disclosure provisions of the statute, the debtor has a right to rescind for up to three years following the transaction. *Id*. Even if the disclosure requirements were not complied with, and Plaintiffs make no such allegation that this Court can discern, Plaintiffs entered into the transaction at issue on July 10, 2006, and their right to rescind under this section of TILA expired in July 2009. The present action was filed on March 29, 2011. Plaintiffs' window to file a cause of action under TILA closed long before this action was commenced, and the Court must dismiss Plaintiffs' claims under TILA.

## VI. Fraud

Plaintiffs sprinkle vague, generalized allegations sounding in fraud throughout the Complaint. To state a claim of fraud under Missouri law, a plaintiff must plead facts that support each of the following elements: (1) a false, material representation; (2) the speaker's knowledge of the falsity of the representation, or his ignorance of its truth; (3) the speaker's intent that the hearer act upon the misrepresentation in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the misrepresentation; (5) the hearer's reliance on the truth of the representation; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Kulovic v. BAC Home Loans Servicing, L.P.*, No. 4:10-CV-2058 CAS, 2011 WL 1483374, at *12-13 (E.D. Mo April 28, 2014).

Although it is difficult to ascertain, Plaintiff's allegations of fraud appear to revolve around Defendant's failure to produce the original, "wet ink signature" Note. However, the complaint does not specify who made a misrepresentation, the nature or materiality of any misrepresentation, when such misrepresentation may have been made, or how anyone relied on a

8

misrepresentation to their detriment. It is not sufficient for Plaintiffs to summarily allege fraud without even the barest attempt to plead such with the required specificity. The Court will dismiss Plaintiff's claims of fraud.

### VII. Fair Credit Billing Act Violation

Plaintiffs' complaint also makes vague reference to the FCBA. The FCBA amended TILA for the purpose of protecting consumers against unfair and inaccurate credit billing and credit card practices, and courts have consistently found that the FCBA only applies to open end credit plans. *See Hobson*, 2011 WL 3704815, at *3. An open end credit plan means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. *Jeffries v. Dutton & Dutton, P.C.*, No. 05 C 4249, 2006 WL 1343629, at *6 (N.D. Ill. May 11, 2006). Plaintiffs' complaint contains no allegation that they contemplated repeated transactions with Defendant beyond the home loan at issue in this action. Thus, the complaint fails to state a claim under the FCBA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's complaint is **GRANTED**. [Doc. 39].

An appropriate Judgment shall accompany this Memorandum and Order.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of January, 2018.